# UNITED STATES DISTRICT COURT DISTRICT OF SOUTH CAROLINA ANDERSON DIVISION

| | |
|---|---|
| D'ASHA MAYLAN HARRISON, on behalf of minor child K.K.D.S. and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ISSAQUEENA PEDIATRIC DENTISTRY, P.A. d/b/a ISSAQUEENA PEDIATRIC DENTISTRY AND ORTHODONTICS,<br><br>Defendant. | C.A. No. _____<br><br>**NOTICE OF REMOVAL** |

## NOTICE OF REMOVAL

Defendant Issaqueena Pediatric Dentistry, P.A. d/b/a Issaqueena Pediatric Dentistry and Orthodontics ("Defendant" or "Issaqueena Dentistry") files this notice of removal of the above-styled case in accordance with 28 U.S.C § 1441, 1446, and 1453 (C/A No: 2025-CP-37-01032) from the County of Oconee, South Carolina, 10th Judicial Circuit, to the District Court of the United States for the District of South Carolina, Anderson Division, and in support of this removal states as follows:

## NATURE OF REMOVED ACTION

1. On December 2, 2025, Plaintiff D'Asha Maylan Harrison filed a Class Action Complaint against Issaqueena Pediatric Dentistry P.A. (hereinafter the "Practice" or "Defendant") (the "Harrison Action"). A true and correct copy of the Class Action Complaint ("Complaint") is appended hereto as **Exhibit A**. This action is currently pending in the Court of Common Pleas, 10th Judicial Circuit, State of South Carolina, Oconee County.

2. Plaintiff alleges that she brings a class action against Defendant for its alleged failure to properly secure and safeguard sensitive personally identifiable information ('PII') and protected health information (PHI') (collectively 'Private Information') of current and former patients that, upon information and belief, was compromised in a recent cyberattack.

3. Plaintiff also claims that ransomware group Interlock was responsible for entering Defendant's environment and extracting the organization's data. (*See* Ex. A ¶ 28).

4. Plaintiff alleges that the ransomware group was able to extract their names, dates of birth, Social Security numbers, contact information, financial information and medical information. (*See* Ex. A ¶ 48).

5. The Complaint alleges that following the breach, Plaintiff "experienced a large influx of spam, scam and phishing calls and texts" as well as "anxiety, sleep disruption, stress, fear, and frustration." Plaintiff also alleges time, money and effort monitoring accounts and credit reports and claims she has suffered "substantially increased risk of fraud, misuse, and identity theft." (Ex. A ¶¶ 52-60).

6. Plaintiff seeks to certify a class of "[a]ll individuals residing in the United States whose Private Information was compromised in the Data Breach affecting Defendant in 2025, including all those individuals who received notice of the breach." (Ex. A ¶ 96).

7. Plaintiff asserts claims against Defendant for negligence, breach of implied contract, breach of fiduciary duty, and unjust enrichment. (Ex. A ¶¶ 107-179).

**TIMELINESS OF REMOVAL**

8. Defendant was served with the Summons and Complaint on December 2, 2025. As such**,** this removal is timely because Defendant filed this removal within 30 days of being served with the Complaint. See 28 U.S.C. § 1446(b) (notice of removal shall be filed within 30 days of

service of complaint); *Goodloe v James Riv. Ins. Co*., 2021 US Dist LEXIS 145949, at *6 (D. Md. Aug. 4, 2021), ("removal begins to run only when the defendant or someone who is the defendant's agent-in fact receives the notice via service…").

## PROPRIETY OF VENUE

9.  This Court is in the judicial district and division embracing the place where the state court case was brought and is pending. Thus, this Court is the proper district court to which this case should be removed. 28 U.S.C. §§ 1441(a), 1446(a).

## GROUNDS FOR REMOVAL

10. This is a civil action over which the Court has original subject matter jurisdiction under 28 U.S.C. §§ 1332 and 1441. Removal is proper under the Class Action Fairness Act of 2005 ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d).

11. **Basis of Original Jurisdiction**. This Court has original jurisdiction over this action under CAFA, codified at 28 U.S.C. § 1332(d). "'Congress enacted CAFA to facilitate adjudication of certain class actions in federal court.'" *Morton v J.P. Morgan Chase & Co*., 2023 US Dist LEXIS 234625, at *8 (D. S.C. Nov. 21, 2023) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)).

12. Unlike traditional diversity jurisdiction, there is no presumption against removal under CAFA. *Lanham v Nationstar Mtge*., LLC, 169 F Supp 3d 658, 660 (S.D. W.Va 2016) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 190 L. Ed. 2d 495 (2014)).

13. Section 1332(d) provides that a district court shall have original jurisdiction over a class action with 100 or more putative class members in which the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, and has minimal diversity between the parties. 28 U.S.C. § 1332(d)(2); *Scott v Cricket Communs*., LLC, 865 F3d 189, 192 (4th Cir 2017).

14.  As set forth below, under 28 U.S.C. § 1332(d) and § 1441(a), Issaqueena may remove the Circuit Court Action to federal court under CAFA because: (1) this action is pled as a nationwide class action; (2) the putative class includes more than 100 members; (3) "minimal diversity" exists, i.e., members of the putative class are citizens of a state different than that of the Defendant; and (4) the matter in controversy, in the aggregate, exceeds the sum or value of $5 million, exclusive of interests and costs. *Id*.

15.  **This Action Is Pled as a Class Action.** CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rule of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1).

16.  Plaintiff brings this class action and seeks class certification under South Carolina pursuant to South Carolina Rules of Civil Procedure 23. (Ex. A ¶ 96) The prerequisite for bringing a class action is that (1) the class must be so numerous that joinder of all members is impracticable. *Gardner v. South Carolina Dep't of Revenue*, 353 S.C. 1, 20-21, 577 S.E.2d 190, 200 (2003) (quoting Rule 23, SCRCP).

17.  **The Putative Class Includes At Least 100 Members**. Plaintiff purports to bring this action on behalf of "[a]ll individuals residing in the United States whose Private Information was compromised in the Data Breach affecting Defendant in 2025, including those that received notice of the breach." (Ex. A ¶ 96). The Complaint further notes that the proposed Class includes hundreds of members. (*Id* ¶ 100). Thus, the number of putative class members exceeds the statutorily required minimum of 100 individuals required under CAFA.

18.     **"Minimal Diversity" of Citizenship Exists**. Under 28 U.S.C. § 1332(d)(2)(A), "the district court shall have original jurisdiction" over a "class in which . . . any member of the class of plaintiffs is a citizen of a State different from any defendant."

19.     **Defendant's Citizenship**. Issaqueena Dentistry is a dental practice with three locations in South Carolina. (See Ex. A ¶ 7)

20.     **Plaintiff's Citizenship.** Plaintiff is also a citizen of South Carolina, but the putative class Plaintiff seeks to represent is broad and expansive geographically. Indeed, the putative class is nationwide in scope. (*See id.* ¶ 96). Although many class members are South Carolina residents, the Practice maintains offices near the North Carolina and Georgia borders, and as such, a significant portion of individuals reside in those states as well as other Southern states. (*See* Declaration of Dr. Camille Horton, ¶ 4, attached as **Exhibit B**).

21.     **The Amount in Controversy Exceeds the CAFA Threshold**. CAFA requires that a complaint put in controversy more than $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of the individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See id.* § 1332(d)(6). In the Fourth Circuit, "[t]he key inquiry in determining whether the amount-in-controversy requirement is met is not what the plaintiff will actually recover but 'an estimate of the amount that will be put at issue in the course of the litigation.'" *Scott,* 865 F.3d at 196 (quoting *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008)). "A removing defendant can use overinclusive evidence to establish the amount in controversy so long as the evidence shows it is more likely than not that 'a fact finder might legally conclude that' damages will exceed the jurisdictional amount." *Id.* (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002)); *see also Raskas v. Johnson & Johnson*, 719 F.3d 884, 887 (8th Cir. 2013); *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

22.     Furthermore, where, as here, "a plaintiff's complaint leaves the amount of damages unspecified, the defendant must provide evidence to 'show . . . what the stakes of litigation . . . are given the plaintiff's actual demands.'" *Id* at 194 (quoting *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005) (emphasis omitted)).

23.     Plaintiff brings claims for negligence, breach of implied contract, breach of fiduciary duty and unjust enrichment. (Ex. A ¶¶ 107-168.).

24.     Plaintiff seeks damages, including *compensatory*, *exemplary*, *punitive*, and *treble* damages, and injunctive relief. (*Id.* ¶¶101(i), Prayer for Relief) (emphasis added).

25.     Plaintiff claims damages of "monetary losses, lost time, anxiety and emotional distress." (*Id.* ¶ 62).

26.     Plaintiff also claims "out-of-pocket costs associated with prevention, detection and recovery from identity theft and fraud" as well as "lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach…" (*Id.* ¶ 62).

27.     Plaintiff alleges the class consists of "hundreds" of individuals. (*Id.* ¶ 100). Notably, in a related action regarding the same Data Breach, those Plaintiffs claim that the number of impacted individuals is in the "thousands." *See Butler* Action, attached hereto as **Exhibit C**). In fact, it is Defendant's belief at this time that there are, at least 10,000 individuals who may have had their information impacted by the Data Breach. (*See* Horton Declaration at ¶ 9).

28.     Where Plaintiff and a class of 10,000 to obtain an award of $100 to pay for one year of credit monitoring, so as reimburse them for "out-of-pocket costs associated with prevention" of future identify theft, that award would be $1,000,000, standing alone. The Complaint pleads that it can take "years" to identify and address identify theft from a data breach. (*Id.* ¶ 65). Should Plaintiffs and a class obtain an award of $100 for five years for credit monitoring, that amount

would be $5,000,000, prior to including damages for emotional distress, punitive damages, and treble damages.

29.     In data incident cases involving similar allegations and where the amount in controversy is not apparent from the face of the complaint, courts routinely hold that the costs of providing credit monitoring and identity theft protection services are properly included in the amount in controversy for purposes of CAFA's jurisdictional requirements. *See, e.g., Porras v. Sprouts Farmers Mkt.,* LLC, No. EDCV 16-1005 JGB (KKX), 2016 U.S. Dist. LEXIS 96805, at *1 (C.D. Cal. July 25, 2016) (denying motion to remand on the grounds that years of credit monitoring for thousands of class members was included in the amount in controversy and therefore exceeded the $5 million threshold); *McLoughlin v. People's United Bank, Inc.,* 586 F. Supp. 2d 70, 73 (D. Conn. 2008) (same); *Fielder v. Penn Station, Inc.,* No. 1:12- cv-2166, 2013 WL 1869618, at *5-7 (N.D. Ohio May 3, 2013) (same); *Caudle v. Towers, Perrin, Forster & Crosby, Inc.,* 580 F. Supp. 2d 273, 276-78 (S.D.N.Y. 2008) (same).

30.     Given Plaintiff's assertion that size of the putative class, combined with the claims and damages sought, it is reasonable to conclude that the aggregate amount in controversy well exceeds $5 million. (*Id.* ¶100).

31.     Based on the claims of the Plaintiff, Defendant can prove that the CAFA amount in controversy has been met. *See, e.g., Lanier v. Norfolk S. Corp.*, 256 F. App'x 629, 632 (4th Cir. 2007) (holding that "[o]nce the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction") (quotation omitted).

32. Thus, because the case was pled as a class action, and because minimal diversity, class size, and the amount in controversy requirements of CAFA are satisfied, Defendant has properly removed the Circuit Court Action to this Court.

## EXCEPTIONS TO CAFA JURISDICTION DO NOT APPLY

33. **The Local-Controversy or Home-State Exception to CAFA Jurisdiction Does Not Apply.** The local-controversy and home-state exception under CAFA do not apply.

34. It is well-settled that the exceptions to CAFA are just that – exceptions. It is Plaintiff's burden to establish that one of those exception's applies, not Defendant's burden to disprove their applicability. CAFA "establishes certain exceptions to the exercise of jurisdiction under the statute, spelling out the circumstances under which the district court may or must decline to exercise jurisdiction. *See* 28 U.S.C. § 1332(d)(3)-(5). Every circuit that has considered the issue has concluded that while the removing defendant bears the burden of showing that CAFA's general jurisdictional requirements are satisfied, the plaintiff has the burden of showing the applicability of one of the exceptions." *Bartels v. Saber Healthcare Grp.,* LLC, 880 F.3d 668, 681 (4th Cir. 2017) (citing *Evans v. Walter Indus., Inc.,* 449 F.3d 1159, 1164 (11th Cir. 2006); *Brinkley v. Monterey Fin. Servs., Inc.*, 873 F.3d 1118, 1121 (9th Cir. 2017); *Mason v. Lockwood, Andrews & Newnam, P.C.*, 842 F.3d 383, 389 (6th Cir. 2016); *Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1262 (10th Cir. 2014); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822 (8th Cir. 2010); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 564 F.3d 75, 78 (1st Cir. 2009); *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009); *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 676 (7th Cir. 2006); *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006)).

35. For either the local controversy or the home state exception to apply, two-thirds or more of the putative class and the primary defendant must be citizens of the state in which the action was filed. *See* 28 U.S.C. § 1332(d)(4)(B) & (C); *see also In re Checking Acct. Overdraft Litig.,* 2012 WL 12877749, at *3 (S.D. Fla. July 25, 2012) ("[B]oth mandatory exceptions of CAFA would require [the party seeking to invoke them] to establish that more than two-thirds of proposed class members are citizens" of the state in which the case was filed).

36. "[R]esidency does not equate to citizenship." *Smith,* 991 F.3d at 1157. Instead, residency is merely one prong of the two-pronged test to prove citizenship. *Id.* (holding that to be a citizen of Florida, the person must "currently reside in Florida and have an intent to remain"). And the other prong—namely, the intent to remain—can only be proved one of two ways. *Id.* at 1156 ("Class action plaintiffs can prove that two-thirds of the putative class are citizens of a certain state in two ways."). Citizenship can be established by "limit[ting] the class definition to citizens of a certain state," *id.,* which Plaintiff has not done here, *see* Ex. A ¶ 160 (defining class with no geographic limit). Or it can be established by "provid[ing] evidence of the class members' state of residence as well as evidence showing their intent to remain in that state." *Smith*, 991 F.3d at 1157.

37. In this case, based on the address information on file with the Practice, there are significant members of the putative class that reside outside of South Carolina, including in Georgia and North Carolina, given those states' proximity to Defendant's locations. (*See* Horton Declaration ¶ 9).

38. **The Interests of Justice Exception Does Not Apply**. This exception, codified under 28 U.S.C. § 1332(d)(3), provides a district court with the discretion to decline jurisdiction where (1) "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate" and (2) "the primary defendants are citizens of the State in which the

9

action was originally filed" based on the consideration of other factors which include (a) whether the claims asserted involve matters of national or interstate interest…

39. Here, as previously noted, the individuals impacted reside across the country, making this a matter of national interest rather than a localized controversy. Accordingly, the discretionary exception should not apply.

40. In sum, none of the CAFA exceptions apply and the Court should retain jurisdiction over the case.

**NOTICE**

41. As required by 28 U.S.C. § 1446(d), Issaqueena Dentistry is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of Court of Common Pleas, Tenth Judicial Circuit, Oconee County, South Carolina.

WHEREFORE, Defendant removes this case in accordance with 28 U.S.C § 1441, 1446, and 1453 from the County of Oconee, South Carolina, 10th Judicial Circuit, to the District Court of the United States for the District of South Carolina, Anderson Division,

Respectfully submitted this 5th day of January, 2026.

>/s/  J. Brendan Kelley
>J. Brendan Kelley (Fed. Bar No. 12762)
>**JACKSON LEWIS P.C.**
>15 South Main Street
>Suite 700
>Greenville, SC 29601
>Telephone: (864) 232-7000
>Brendan.Kelley@jacksonlewis.com
>
>*Attorney for Defendant Issaqueena Pediatric Dentistry P.A., d/b/a Issaqueena Pediatric Dentistry and Orthodontics*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of January, 2026, I caused a true and correct copy of the foregoing Defendant Issaqueena Pediatric Dentistry P.A., d/b/a Issaqueena Pediatric Dentistry and Orthodontics Notice of Removal to be electronically filed with the Court using CM/ECF and electronic mail to counsel of record for Plaintiff, addressed as follows:

Karolan Ohanesian
Glenn V. Ohanesian
**OHANESIAN & OHANESIAN**
P.O. Box 2433
Myrtle Beach, SC 29578

Raina C. Borrelli
Samuel J. Strauss
**STRAUSS BORRELLI**
9880 North Michigan Avenue, Suite 1610
Chicago, Illinois 60611

                                          */s/ J. Brendan Kelley*
                                          J. Brendan Kelley